THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

ENTERED
CLERK. US DISTRICT COURT
JAN 12 2001
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

FILED
CLERK US DISTRICT COURT
JAN 12 2001
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARLAN ELLISON, <br><br> Plaintiff, <br><br> vs. <br><br> STEPHEN ROBERTSON; AMERICA ONLINE, INC.; REMARQ COMMUNITIES, INC.; CRITICAL PATH, INC.; CITIZEN 513; AND DOES <br><br> Defendants. | CV 00-04321 FMC (RCx) <br><br> **ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND DENYING WITHOUT PREJUDICE REMARQ COMMUNITIES, INC., AND CRITICAL PATH'S MOTION FOR SUMMARY JUDGMENT** <br><br> Oral Argument: January 8, 2001 |

## I. Introduction

Plaintiff Harlan Ellison, a professional writer, filed a second amended complaint against Defendants Stephen Robertson ("Robertson"), America Online, Inc. ("AOL"), RemarQ Communities, Inc. (RemarQ), Critical Path, Inc. ("CP") (RemarQ's parent company), Citizen 513, and Does on October 27, 2000, alleging the following causes of action: (1) Direct Copyright Infringement against all Defendants; (2) Contributory Infringement against all Defendants; (3) Vicarious Infringement against RemarQ, CP, and AOL; (4) Unfair Competition in Violation of Section 43(a) of the Lanham Act against all Defendants; and (5) Trademark Dilution under Section 43(c) of the Lanham Act against all Defendants except Robertson and AOL.

On November 22, 2000, AOL filed a motion to dismiss Plaintiff's second

amended complaint, or in the alternative, for a more definite statement. On November 20, 2000, RemarQ and CP filed a motion to dismiss Plaintiff's second amended complaint, or in the alternative, for summary judgment. Both matters are currently pending before the Court.

After considering the moving and responding papers, the Court issues the following decision:

## II. Discussion

### A. AOL's Motion to Dismiss

#### 1. Standard

AOL's motion to dismiss requires the Court to determine whether Plaintiff's complaint states claims upon which relief may be granted. See Fed R. Civ. P. 12(b)(6). The Court will not dismiss Plaintiff's claims for relief unless he cannot prove any set of facts in support of his claims that would entitle him to relief. See *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir. 1998). In limiting its inquiry to the content of the complaint, the Court must take the allegations of material fact as true and construe them in the light most favorable to the Plaintiff. See *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir. 1985). Additionally, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 755 (9th Cir. 1994).

#### 2. Direct Infringement

To establish a claim of direct copyright infringement, a plaintiff must demonstrate (1) ownership of a valid copyright and (2) copying of protectable expression by the defendant. See *Shaw v. Lindheim,* 919 F.2d 1353, 1355 (9th Cir. 1990). Infringement occurs when a defendant violates one of the exclusive rights of a copyright holder. See 17 U.S.C. § 501(a). The copyright

holder has the exclusive right to reproduce the copyrighted work, prepare derivative works, distribute copies to the public, and publicly display the work. *See* 17 U.S.C. § 106(1)-(3) & (5). "Direct infringement does not require intent or any particular state of mind." *Religious Tech. Ctr. v. Netcom On-Line Communication Serv., Inc.*, 907 F. Supp. 1361, 1367 (N.D. Cal. 1995).

Plaintiff alleges that he is the copyright owner of the works at issue. (SAC, ¶ 13) Additionally, Plaintiff alleges that his works were copied by individuals onto news servers owned and operated by AOL, and then copied by AOL to be recopied throughout Usenet. (SAC, ¶ 99) Individuals who subscribe to Usenet newsgroup servers such as AOL are then able to make copies of Plaintiff's works from the files provided in alt.binaries.e-book. (SAC, ¶ 100)

AOL argues that plaintiff's claim for direct infringement is barred by the Digital Millennium Copyright Act, 17 U.S.C. § 512. Section 512 of the Digital Millenium Copyright Act ("DMCA"), signed into law by President William J. Clinton on October 28, 1998, addresses the liability of online service and Internet access providers for copyright infringement occurring online. AOL claims that its activities fall within the safe harbor provisions of subsection 512(a), or alternatively, subsection 512(c).

Subsection 512(a) limits liability "for infringement of copyright by reason of the [service] provider's transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing or providing connections." This limitation of liability only applies if five conditions are satisfied: (1) the communication was initiated by or at the discretion of a person other than the service provider; (2) it is carried out through an automatic technical process without selection of the material by the service provider; (3) the service provider does not select the recipients of the material except as an automatic response to

1  the request of another; (4) no copy of the material made in the course of
2  intermediate or transient storage is maintained on the system or network so that
3  it is ordinarily accessible to anyone other than the anticipated recipients, and no
4  copy is maintained on the system or network in a manner ordinarily accessible to
5  the anticipated recipients for a longer period than is reasonably necessary for the
6  communication; and (5) the content of the material is not modified in the course
7  of the transmission. See 17 U.S.C. § 512(a)(1)-(5).

8  From the allegations of Plaintiff's Complaint, it appears to the
9  Court that America Online qualifies for the Transitory Digital Network
10 Communications exemption set out in 17 U.S.C. § 512(a) by meeting the initial
11 five criteria. There are, however, further requirements in § 512(i). The
12 exemption applies to a service provider only if the service provider has (1)
13 adopted and reasonably implemented policies for the termination of subscribers
14 who are repeat infringers and (2) accommodated standard technical measures
15 used by copyright owners to protect their works. See 17 U.S.C. § 512(i)(a) and
16 (b); NIMMER ON COPYRIGHT, Ch. 12-A § 12B.02. Therefore, Defendant's reliance
17 on *Religious Technology Center v. Netcom on-Line Communication Service,*
18 *Inc.,* 907 F.Supp. 1361, is unavailing at this stage of the litigation. *Netcom* was
19 written before the enactment of the DMCA and, necessarily, did not address the
20 termination policies established by Congress. Analyzing the Plaintiff's Complaint
21 within its four corners, it cannot be determined as a matter of law that Defendant
22 could not be found liable for direct infringement.

23 AOL also argues that Plaintiff's claim for direct infringement is
24 barred by subsection 512(c). Subsection 512(c) limits the liability of qualifying
25 service providers for the "storage at the direction of a user of material that
26 resides on a system or network controlled or operated by or for the service
27 provider" if the service provider: (1) does not have actual knowledge that the
28 material or an activity using the material on the system or network is infringing, or

1  in the absence of such actual knowledge, is not aware of facts or circumstances
2  from which infringing activity is apparent; (2) does not receive a financial benefit
3  directly attributable to the infringing activity in a case in which the service
4  provider has the right and ability to control such activity; and (3) upon notification
5  of said infringement, responds expeditiously to remove, or disable access to, the
6  material that is claimed to be infringing or to be the subject of the infringing
7  activity.  See 17 U.S.C. § 512(c)(1)(A)-(C).  Furthermore, the limitations of liability
8  established in subsection 512(c) apply only if the service provider has a
9  designated agent to receive notification of claimed infringement.  See 17 U.S.C.
10 § 512(c)(2).
11         Again, determining whether subsection 512(c) is applicable to
12 AOL requires consideration of evidence as to whether AOL had actual or
13 constructive knowledge of the infringing activity; whether AOL received a
14 financial benefit directly attributable to the infringing activity; and whether AOL
15 responded expeditiously to remove or disable access to the infringing material.
16 Such a determination might be feasible in connection with a motion for summary
17 judgment brought after sufficient discovery had been completed.  It is premature,
18 however, on a motion to dismiss.  AOL's motion to dismiss Plaintiff's claim for
19 direct infringement is denied.
20         3. Contributory Infringement
21         To state a claim for contributory copyright infringement,
22 Plaintiff must allege that AOL, with knowledge of the infringing activity, induced,
23 caused, or materially contributed to the infringing conduct of another.  See
24 *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d.
25 Cir. 1971); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir.
26 1996).
27         Plaintiff alleges that AOL contributes to the infringement of
28 Plaintiff's works by failing to take steps to identify and stop infringers, failing to

1  remove infringing material, and failing to properly respond to notifications of
2  infringement. (SAC, ¶ 120) As a result of this failure to act, AOL has attracted
3  more subscribers who look for safe havens from prosecution for wrongdoing.
4  These allegations would not subject Defendant America Online to liability for
5  contributory infringement. The Act does not impose liability on an internet
6  service provider who fails to monitor its service to spot copyright infringement.
7  "Nothing in this section shall be construed to condition the applicability of
8  subsections (a) through (d) on: (1) a service provider monitoring its service or
9  affirmatively seeking facts indicating infringing activity, except to the extent
10 consistent with a standard technical measure complying with the provisions of
11 subsection (i); or (2) a service provider gaining access to, removing, or disabling
12 access to material in cases in which such conduct is prohibited by law." 17
13 U.S.C. § 512(m).  However, Plaintiff also alleges that by using AOL's search
14 engines and links, AOL users were able to access alt.binaries.e-book through
15 RemarQ's free web-based news group service. (SAC, ¶ 24)  Plaintiff alleges
16 that AOL monitors the activities of its subscribers and maintains records which
17 track the copying of binary files from its news servers. (SAC, ¶ 27) Plaintiff also
18 claims that AOL had actual or constructive knowledge that alt.binaries.e-book
19 was a pirate news group as of April 17, 2000, but did nothing until served with
20 this lawsuit. (SAC, ¶ 78) Plaintiff has therefore adequately pleaded a cause of
21 action for contributory infringement.

            4. <u>Vicarious Infringement</u>

                To state a claim for vicarious copyright infringement, Plaintiff must allege that AOL possesses the right and ability to supervise the infringing conduct and receives a direct financial benefit from the infringement. See *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 306 (2d Cir. 1963); *Netcom*, 907 F. Supp. at 1375.

                Plaintiff alleges that AOL had the right and ability to supervise

and/or control the infringing conduct of its users by preventing or terminating a user's access to alt.binaries.e-book or by refusing to index and create links to infringing locations containing Plaintiff's works. (SAC, ¶ 132) Plaintiff also alleges that AOL derived substantial benefit from the infringement in that, among other things, AOL sought advertising revenue based on the number of subscribers it had to its news groups, and on the number of "hits" a newsgroup received. (SAC, ¶ 94) Furthermore, the amount of fees AOL charges for advertising on its pages is directly related to the number of users, which in turn, is dependent on AOL's facilitation of and participation in the unauthorized reproduction and distribution of Plaintiff's works. (SAC, ¶ 133)

Plaintiff also alleges that, in order to increase its revenues and secure its hold on the online service market, AOL and its subsidiaries engage in research and development of software and hardware for public release. (SAC, ¶ 134) Plaintiff alleges that in March, 2000, two employees of Nullsoft, a research and development subsidiary of AOL, developed Gnutella, a real-time search, peer-based file-sharing client that allows a user running a Gnutella client to search for and download files from other Gnutella users. (SAC, ¶ 135) Plaintiff's copyrighted works have allegedly been infringed by copies made, requested and transferred by the Gnutella Internet file-sharing Protocol. (SAC, ¶ 137) Plaintiff claims that AOL had the right and ability to monitor and control the research and activities of its employees, but AOL's reaction to the release of Gnutella has been to distance itself from the product. (SAC, ¶ 138)

Plaintiff has pleaded allegations sufficient to state a claim for vicarious copyright infringement. Plaintiff has alleged that AOL possesses the right and ability to supervise the infringing conduct and that AOL has a direct financial interest in the exploitation of copyrighted materials. Defendant's motion to dismiss is denied.

### 5. Trademark Infringement, Lanham Act § 43(a), Unfair Competition

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce any . . . name . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which: (A) is likely to cause confusion . . . as to the affiliation, connection or association of such person with another, or as to the origin, sponsorship, or approval of his goods, . . . or commercial activities by another . . . shall be liable in a civil action by any person who believes that he is or is likely to be damaged by such act . . . ." In other words, a federal claim under Lanham Act § 43(a) for infringement is triggered by a use which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of the user with the senior user. *See* 15 U.S.C. § 1125(a); 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 27:18 (4th ed. 1996). In order to prevail on a claim under Lanham Act § 43(a), a plaintiff must show: (1) there is a valid, protectable mark and (2) the defendant's use of the mark creates a "likelihood of confusion." *See Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); *Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.*, 119 F. Supp. 2d 1083, 1088 (C.D. Cal. 2000).

Plaintiff alleges that he is a famous writer and personality and has spent more than forty years developing the famous mark and persona of "Harlan Ellison." (SAC, ¶ 143) Plaintiff claims his name, face, voice and works are all famous in the publishing, literary, and entertainment worlds. (SAC, ¶ 146) Plaintiff alleges that his mark, "Harlan Ellison," is used to direct Internet search engines to infringing copies of Plaintiff's works. (SAC, ¶ 147) Plaintiff alleges that subscribers to alt.binaries.e-book wrongly believe that those works of Plaintiff appearing online are there with Plaintiff's approval. (SAC, ¶ 152) Plaintiff

8

is damaged by the false connection of the mark "Harlan Ellison" with the unauthorized editions of his works. (SAC, ¶ 153) Plaintiff is famous for the efforts he has taken to control the quality and output of his literary work and has taken great pains to stop the infringement of his name and works. (SAC, ¶¶ 150, 151) Plaintiff has also engaged in licensing arrangements to permit his works to be distributed and sold in electronic format. (SAC, ¶ 149)

Plaintiff's alleged mark is "Harlan Ellison," a personal name. Personal names can be protected as trademarks only upon proof that through usage, they have acquired distinctiveness and secondary meaning. See Grupo, 119 F. Supp. 2d at 1091; 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 13:2 (4th ed. 1996). Whether or not a symbol has acquired secondary meaning is a question of fact. See MCCARTHY, at § 15:29. Whether or not the mark "Harlan Ellison" warrants protection is inappropriate for a motion to dismiss where the Court merely looks at the allegations of the complaint. Although Plaintiff's allegations concerning Defendant's conduct are minimal and somewhat vague, the Court finds they satisfy Federal pleading requirements. Plaintiff has sufficiently pleaded the elements of a section 43(a) violation. AOL's motion to dismiss is therefore denied.

B. <u>RemarQ & CP's Motion to Dismiss or Motion for Summary Judgment</u>

1. <u>Standard</u>

Defendants' motion to dismiss requires the Court to determine whether Plaintiff's complaint states claims upon which relief may be granted. See Fed R. Civ. P. 12(b)(6). The Court will not dismiss Plaintiff's claims for relief unless he cannot prove any set of facts in support of his claims that would entitle him to relief. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998). In limiting its inquiry to the content of the complaint, the Court must take

1  the allegations of material fact as true and construe them in the light most
2  favorable to the Plaintiff. See *Western Reserve Oil & Gas Co. v. New*, 765 F.2d
3  1428, 1430 (9th Cir. 1985).
4        If the Court finds that the resolution of Plaintiff's claims require
5  facts extraneous to Plaintiff's complaint, Defendants seek summary adjudication
6  of the claim. *See* Fed. R. Civ. P. 12(b) (if "matters outside the pleading are
7  presented to and not excluded by the court, the motion shall be treated as one
8  for summary judgment"). Summary judgment or summary adjudication is only
9  proper where the evidence demonstrates that "there is no issue as to any
10  material fact and that the moving party is entitled to judgment as a matter of law."
11  Fed. Rule Civ. Proc. 56(c); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith*
12  *Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).
13        2. <u>Direct, Contributory and Vicarious Infringement</u>
14        Plaintiff has pleaded causes of action for direct, contributory,
15  and vicarious infringement sufficient to defeat a Motion to Dismiss. Defendants,
16  however, also seek summary adjudication of Plaintiff's infringement claims.
17        Federal Rule of Civil Procedure 56(f) provides, "Should it
18  appear from the affidavits of a party opposing [the motion for summary judgment]
19  that the party cannot...present...facts essential to justify the party's opposition,
20  the court may refuse the application for judgment...to permit affidavits to be
21  obtained or depositions to be taken or discovery to be had or may make such
22  other order as is just." This prevents the opposing party from being "railroaded"
23  by a premature motion for summary judgment. See *Celotex Corp. v. Catrett*, 447
24  U.S. 317, 326 (1986). No responsive pleadings have been filed in this matter
25  and no discovery has taken place, except for subpoenas issued to identify online
26  infringers of Plaintiff's works. Plaintiff claims that if additional discovery is
27  permitted, it will likely show, among other things, that RemarQ and CP: (1) were
28

1  aware of the infringing activities and did nothing to stop it[1]; (2) profit from turning
2  a blind eye to the infringing activities of their subscribers[2]; (3) had no Designated
3  Agent for Notice of Copyright Infringement listed with the Copyright Office[3]; (4)
4  have no effective policy to ban copyright infringers from its services[4]; and (5)
5  have the right and means to block access to alt.binaries.e-book and its mirror
6  sites but have chosen not to do so because the pirate site is too valuable an
7  attraction for subscribers. (Valada Dec., 2:4-28)

8            The state of the evidence at this stage of the proceedings
9  would support summary judgment in favor of Defendant on the causes of action
10 for contributory and vicarious liability.  Defendant's Uncontroverted Facts
11 numbers 1 through 6 are not, in fact, controverted by any evidence offered by
12 Plaintiff in opposition.  In some instances, the evidence cited by Plaintiff simply
13 does not contradict Defendant's factual assertions.  In others, such as Fact No.
14 4, Plaintiff cites to the entire declaration of Plaintiff's counsel, and to an

---

[1] Such discovery is relevant to establishing RemarQ and CP's actual or constructive knowledge of the infringing activity and whether it acted expeditiously to remove or disable access to the infringing material. RemarQ and CP's knowledge is relevant to proving contributory infringement and to the application of subsection 512(c) of the DMCA.

[2] Such discovery is relevant to establishing whether RemarQ and CP received a financial benefit directly attributable to the infringing activities. Whether RemarQ and CP received a financial benefit is relevant to proving vicarious infringement and to the application of subsection 512(c) of the DMCA.

[3] In order to take advantage of the safe harbor provision set forth in subsection 512(c) of the DMCA, RemarQ and CP must have designated an agent to receive notifications of claimed infringement. See 17 U.S.C. § 512(c)(2).

[4] "The limitations of liability established by [section 512 of the DMCA] shall apply to a service provider only if the service provider has adopted and reasonably implemented, and informs subscribers and account holders...of, a policy that provides for the termination...of subscribers...of the service provider's system or network who are repeat infringers." 17 U.S.C. § 512(i)(1)(A).

unidentified exhibit. The Court will not search through Plaintiff's documents in an effort to locate evidence in support of his contentions.

Nonetheless, Plaintiff has requested time to conduct additional discovery which he asserts will produce evidence to defeat summary judgment. The Motion fo Summary Judgment is, therefore, denied without prejudice.

### 3. Fair Use Defense

RemarQ and CP contend that its use of the copyrighted material was a "fair use" as a matter of law and therefore not infringement. Section 107 of the 1976 Copyright Act provides that "...the fair use of a copyrighted work....is not an infringement of copyright...." 17 U.S.C. § 107. Congress has set out four non-exclusive factors to be considered in determining the availability of the fair use defense: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. See 17 U.S.C. § 107. Whether the "fair use" defense applies requires a case-by-case analysis rather than the application of bright-line rules. See Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994). All of the factors "are to be explored, and the results weighed together, in light of the purposes of copyright." Id. This issue will be better analyzed after Plaintiff has completed his discovery.

### 4. Trademark Infringement, Lanham Act § 43(a), Unfair Competition

Summary judgment should be denied for the same reasons that AOL is not entitled to a dismissal of this claim. Whether Plaintiff's mark "Harlan Ellison" warrants protection in the first place depends upon proof that through usage, it has acquired distinctiveness and secondary meaning. Moreover, factors relevant to whether "Harlan Ellison" has achieved secondary

meaning include: survey evidence; direct consumer testimony; exclusivity, manner and length of use of the mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant. See Grupo, 119 F. Supp. 2d at 1091; Filipino Yellow Pages, Inc. v. Asian Journal Publications, 198 F.3d 1143, 1151 (9th Cir. 1999). Because no discovery has taken place in this matter, the request for summary judgment is premature.

### 5. <u>Trademark Dilution, Lanham Act § 43(c)</u>

Plaintiff premises his dilution claim on 15 U.S.C. § 1125(c)(1), which provides that "[t]he owner of a famous mark shall be entitled...to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the mark...." To prove a violation of the Federal Trademark Dilution Act, a plaintiff must show that (1) the mark is famous; (2) the defendant is making a commercial use of the mark; (3) the defendant's use began after the mark became famous; and (4) the defendant' use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. See Cairns v. Franklin Mint Co., 24 F. Supp. 2d 1013, 1033-1034 (C.D. Cal. 1998). The Federal Trademark Dilution Act lists eight non-exclusive factors a court may consider in determining whether a mark is distinctive and famous. See 15 U.S.C. § 1125(c)(1)(A)-(H).

Plaintiff alleges that RemarQ and CP have placed unauthorized copies of Plaintiff's works in the stream of interstate and international commerce. (SAC, ¶ 160) RemarQ and CP are able to attract revenue by the number of users or "hits" they receive. Plaintiff alleges that a false association of Plaintiff's mark with their enterprises inures to their benefit and to Plaintiff's loss. (SAC, ¶ 161) The mark "Harlan Ellison" has been famous for more years than the Internet has existed and consequently precedes

RemarQ and CP's use of the mark. (SAC, ¶ 162) Plaintiff also alleges that RemarQ and CP's infringing works were not subject to the careful scrutiny and quality control Plaintiff maintains over all the goods and services which appear in conjunction with his mark and which the public has come to expect from a "Harlan Ellison" endeavor. (SAC, ¶ 163) Plaintiff further alleges that the association of Plaintiff's mark with the piracy of RemarQ and CP tarnishes Plaintiff's mark, diminishes the good will Plaintiff has earned, and interferes with the ability of consumers to distinguish among competing products. (SAC, ¶ 164) Plaintiff has sufficiently pleaded the requisite elements of his claim for dilution and RemarQ and CP's motion to dismiss is denied. *See also Cairns,* 24 F. Supp. 2d at 1035.

As to RemarQ and CP's summary judgment motion, the Court also concludes that it should be denied to enable Plaintiff time to complete discovery.

### III. Conclusion

The Court denies Defendants' motions to dismiss. RemarQ and CP's motion for summary judgment is also denied, without prejudice. Defendants are to answer Plaintiff's second amended complaint within ten (10) days of the date of this Order.

DATED: January 12, 2001.

FLORENCE-MARIE COOPER, Judge
United States District Court